OPINION OF THE COURT
Chief Judge Cooke.
At about 10:00 p.m. on July 4, 1979, Deborah C. was walking to her work at Cohoes Memorial Hospital. A man passed her going in the other direction. He turned, came up behind her, covered her eyes and mouth, and told her not to scream. Deborah was pushed down a slight embankment into some bushes and raped. After the attacker left, Deborah put her clothes back on and ran to the hospital’s emergency room.
While receiving treatment, the victim described her attacker as having “long blond hair.” When an officer arrived to take a report, Deborah elaborated, stating that the assailant had shoulder-length blond hair, weighed about 150-160 pounds, and was 5 feet 8 inches to 5 feet 9 inches tall. She repeated her description once more 16 hours after the attack.
At trial, in December, 1980, defendant proceeded on a “mistaken identification” defense, and sought to establish an alibi. To controvert the victim’s identification, he pre *277 sented evidence that his hair was red; that, on the day of the attack, it could not have been the length claimed by the victim; and that he was six feet tall. Defendant’s alibi, corroborated by his wife, was that he was at home, ill, when the rape occurred. This evidence conformed to a notice of alibi served by defendant more than eight months before the trial.
Defendant’s wife testified on his behalf. She was cross-examined about her statements made to the police on October 5,1979, when she said that defendant had been at a party the night of the rape and that he could prove it by a receipt for a keg of beer that he had purchased. The prosecutor asked Mrs. Whalen why she had not come forward before trial with her information that defendant actually was at home that night. An examination outside the jury’s presence revealed that defendant’s attorney had instructed Mrs. Whalen not to speak to the police. The Judge instructed the jury that a citizen has no civic or moral duty to contact law enforcement officials with exculpatory information. When the Assistant District Attorney resumed his cross-examination, he abandoned his line of questioning as to Mrs. Whalen’s failure to contact the authorities. On redirect, defense counsel elicited the fact of the lawyer’s advice not to speak with the police.
During summation, the prosecutor repeatedly sought to color defendant’s alibi as a recent fabrication. In the course of argument, the following exchange occurred:
“Prosecutor: The first we hear of the defendant being home that night is today in court. But she was so positive.
“Defense Counsel: I object to that misstatement. Judge, that’s a boldfaced [sic] misstatement.
“The Court: Just a moment.
“Defense Counsel: Long ago the District Attorney was put on notice.
“Prosecutor: Untrue, your Honor.”
Defendant unsuccessfully moved for a mistrial, partly on the basis of this exchange.
At trial, defendant requested an expansive charge on identification testimony that would emphasize its unrelia *278 bility and the close scrutiny that should be given to such evidence. The Trial Judge declined to grant the request, instead delivering a minimal instruction that the prosecutor had the burden of proving identification beyond a reasonable doubt. Defendant also requested an instruction that the prosecutor had the burden of disproving an alibi beyond a reasonable doubt. The court acceded to this, but, in delivering the charge, declared, “If the evidence as to the alibi, if believed by you, when taken into consideration with all the other evidence raises a reasonable doubt as to the defendant’s guilt, he is entitled to an acquittal” (emphasis added).
Defendant was convicted of rape in the first degree. The Appellate Division affirmed, and leave to appeal was granted by a Judge of this court. We now reverse.
Defendant challenges the jury charge on two grounds. First, he argues that the court’s refusal to give the expansive identification instruction was error. Second, defendant asserts that, as given, the charge on alibi improperly shifted the burden of proof to him.
As noted above, defendant unsuccessfully requested that the jury be instructed “that identification testimony should be received with caution and scrutinized with care.” Instead, in response the court charged, “It is the obligation of the People in this case to prove each and every element of each and every crime charged beyond a reasonable doubt, and this includes the identity of the defendant.” After the entire charge was given, defendant renewed his request for a more detailed instruction.
The essence of defendant’s argument is that identification evidence is always suspect, so that, when a trial involves a close question of identity, the jury should receive an instruction emphasizing the scrutiny to be given to such evidence. The potential for inaccuracy in visual identification evidence is well known to the legal community (see, e.g., McGowan, Constitutional Interpretation and Criminal Identification, 12 Wm & Mary L Rev 235; Note, Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification, 29 Stan L Rev 969), and has been recognized by the Supreme Court (see United States v Wade, 388 US 218).
*279 Although aware of the problem raised by defendant, this court does not find legal error in the minimal charge that was technically correct. A Judge who gives a general instruction on weighing witnesses’ credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law. No cognizable prejudice accrues to any party.
Although no error occurred, this court considers it advisable to comment that the better practice is to grant a defendant’s request and give the expanded charge. Mistaken identity will often be intertwined with an alibi. The latter also may be expected to involve testimony by a defendant’s family or friends (see, e.g., People v Dawson, 50 NY2d 311) — witnesses whose personal interest will be drawn to the jury’s attention as possibly injecting bias into their testimony. Out of a sense of fairness, attention should also be drawn to the possible unreliability of identification testimony. The First and Second Departments have held that a detailed charge should be given when identification is in controversy (see, e.g., People v Rodriquez, 61 AD2d 914 [1st dept]; People v Gardner, 59 AD2d 913 [2d dept]). Indeed, after deciding the present case, the Third Department considered another identity/alibi case and concluded, “We deem the court’s instructions on identification to be legally sufficient but, upon the retrial, which we determine to be necessary, it is indicated that a more thorough instruction on identification be given in the interest of justice.” (People v Landor, 92 AD2d 625, 626.) New York’s trial courts are encouraged to exercise their discretion by giving a more detailed identification charge when appropriate. Certainly, no undue burden is placed on the court in complying with a defendant’s request for such a charge.
Defendant’s other objection to the jury charge goes to the court’s alibi instruction. As given, the charge may be perceived as improperly shifting the burden of proof to defendant. For the reasons that follow, it is held that the matter is not preserved for this court’s review.
Any party may make oral or written requests to charge, before or after the charge, and the court must rule promptly on each request; a failure to rule is deemed a denial (CPL 300.10, subd 5). The Legislature has specially *280 provided for preserving such issues for appellate review: “In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court’s ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.” (CPL 470.05, subd 2.)
In People v Le Mieux (51 NY2d 981), this court held that an objection was preserved when the court did not grant a written request and no specific objection was stated after the jury charge. Defense counsel there prefaced his specific objections with a reiteration that all “previously requested” instructions be given. This court concluded that there was no “clear intent to waive a position already preserved” (id., at p 983).
Different circumstances prevail here. Rather than denying defendant’s request, the Trial Judge granted it, but then delivered a charge on alibi that was not to defendant’s satisfaction. Afterwards, defense counsel stated, “I would respectfully renew at this time the request to charge the language which I used prior to the Court’s instructions to the jury, prior to the summations; specifically, the request I made pursuant to identification.” When a Judge grants a request to charge and then fails to deliver the charge as requested, the requesting party has an obligation to draw the error to the Judge’s attention. Inasmuch as defendant’s request was initially granted and his comments after the charge did not alert the Trial Judge to the error so as to afford an opportunity to correct himself, defendant must be deemed to have waived any objection to the alibi instruction.
Defendant, however, raises another argument that does require reversal. The prosecutor’s conduct during summation was improper and prejudicial to defendant. The prosecutor repeatedly characterized defendant’s alibi as a fabrication concocted during trial, notwithstanding the notice received months earlier and his knowledge that both defendant and his wife had been advised by counsel not to discuss anything with the police. This in itself violated the *281 prosecutor’s obligation to seek justice, rather than conviction (see Code of Professional Responsibility, EC 7-13). The prosecutor did not stop there, however. He then made himself a witness before the jury, expressly and falsely denying that notice had been given. This was completely unjustified, going far beyond any bounds of proper advocacy. Defendant’s request for a mistrial should have been granted.
One other matter should be noted. At trial, the prosecutor was precluded on the basis of CPL article 240 from asking defendant about a prior inconsistent statement that he had given to the police as to his whereabouts on July 4. The prosecutor was permitted to ask defendant whether he had told police that he was at home when the rape occurred. In light of the reversal based on prosecutorial misconduct, this court does not reach the question whether the cross-examination was proper.
Defendant’s other arguments have been considered and are either unpreserved or without merit.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to County Court, Albany County, for a new trial.
Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
Order reversed, etc.