■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OSCAR HOLLIS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Agresta, J.), rendered December 9, 1980, convicting him of robbery in the second degree and assault in the second degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. No questions of fact have been raised or considered.

On this appeal, the defendant, in essence, contends that he was denied due process because of the trial court's uneven marshaling of the evidence and its charge on identification. We agree with defendant's contentions.

The trial was of very brief duration. There were only two witnesses, Daniel Austin, the arresting officer, and the complainant, Ms. Gross. The People sought to establish that the defendant robbed and assaulted Gross on January 4, 1980. Austin, the first witness, testified that he entered the case on January 9, 1980, five days after the incident, when he interviewed Gross at her home. Two days later, on January 11, 1980, he arranged for Gross to view a six-man lineup. Defendant was among the men in the lineup. As a result of Gross' responses to his questions after she viewed the lineup, Austin arrested defendant.[*] On cross-examination, Austin testified that when he first met Gross on January 9, 1980, he asked her "to describe as best she could" what the perpetrator looked like. "She said he had a slight mustache and that he was a male black and he wore [*sic*] that is it. As far as appearance". She further stated he wore dark clothing and a stocking hat, and was shabbily dressed.

The complainant, Gross, the only other witness, testified to the circumstances of the robbery and assault. Her testimony indicated that the incident occurred in the elevator of her building. She was coming home from the grocery store carrying packages and her pocketbook. The elevator was illuminated by a "darkish light". No one was in the elevator when she entered, but a man walked in just before the door closed. Realizing he did

---

[*] Since defendant did not object upon the trial to this testimony obviously introduced to establish that Gross had picked defendant out of the lineup, nor raise any issue with respect thereto on appeal, we have not considered the propriety of the officer's testimony (but see *People v Tufano,* 69 AD2d 826; CPL 60.25; *People v Trowbridge,* 305 NY 471).

not belong in the building, she started to walk out of the elevator. As she tried to leave, he grabbed her from behind, his two arms going around her throat, and choked her until she collapsed and fell. Then he grabbed her pocketbook and ran.

When asked whether she saw the person in court, she said, "I think it's that man there (indicating). I know that he has a space between his two front teeth. If he would open his mouth, I would tell you". The court had defendant brought to the witness and directed that he open his mouth. The court then asked Gross, "Is that what you mean?" She answered, "Yes." The court instructed defendant to face the jury and open his mouth.

The prosecutor then elicited from Gross that there came a time when she viewed a lineup. She told the police it was somebody in the lineup and was asked "to point out which one it was" and she did. The prosecutor did not pursue the matter further, but at the conclusion of the direct examination, the court asked Gross, "[t]he person you pointed out, was that the same person that was in the elevator?" Gross answered, "Yes."

On cross-examination, Gross testified that the only time she saw the perpetrator's face during the course of the crime was when he walked into the elevator. It was only "a glimpse" and then he turned his head almost immediately. It was only a couple of seconds before he started to choke her and she did not see his face while he was choking her. "He was only in the elevator maybe a few seconds". The perpetrator did not say anything during the entire incident, but he had his mouth slightly open when he walked into the elevator. She also testified that the police did not ask her for a description, but that she told them that the man was "a slim, black man with a stocking or tight woolen hat over his head", and he "was wearing dark clothes, shabby clothes". *She never told the police about his teeth because they didn't ask.* She could not tell whether he had bushy eyebrows, large lips, any scars on his face or the color of his eyes. She also testified that she really did not remember when the lineup was held.

Prior to summations, defense counsel requested "a special charge" with respect to the issue of identification and excepted to the court's denial of his request.

In its charge, after stating that it would not review the evidence, but only "touch upon the evidence, so [the jury] can better understand the law", the court marshaled the facts on the issue of identification as follows:

"[Complainant] said she did go to the precinct to a line-up on January the 11th and identified a person in that line-up, and she said that person is the defendant before you and was the same person who committed the act upon her.

"She further testified that the person who committed this act had a separation in the front teeth, and the Court permitted you to observe the defendant and have him open his mouth and make your own conclusions.

"The defendant, on the other hand, denies by his plea of not guilty, any of the charges against him and he puts in issue each and every one of the charges and all of the elements therein. He also puts in issue before you the question of identification, contending that this may have happened to [complainant] but he was not the person who did these acts, and he asked you to observe from the testimony whether she had the opportunity to observe the person who committed these acts upon her and whether the conditions prevailing at the time enabled her to identify the defendant as the person who committed these acts".

It is well settled that a court, in its charge, need not marshal all the evidence, but must "state the material legal principles applicable to the particular case" (CPL 300.10, subd 2; *People v Williamson,* 40 NY2d 1073, 1074). If, however, the court does refer to the evidence, it must do so fairly and in an even-handed manner (*People v Williamson, supra; People v Bell,* 38 NY2d 116).

Here, the court, after stating that it would not review the evidence, placed emphasis on the two salient points which constituted the strengths of the People's case on the issue of identification, the only real issue in the case, by referring to and *embellishing upon* Gross' testimony concerning the lineup and in-court identifications, but made no specific mention whatever of the weaknesses of that testimony that defense counsel had brought out on cross-examination. In our view, this was error, and, as this critical issue turned on the question whether or not Gross was mistaken in her identification of defendant, the error is of such magnitude that the conviction cannot stand (*People v Knowell,* 94 AD2d 255; *People v Daniels,* 88 AD2d 392; *People v Gaines,* 80 AD2d 561; *People v Gardner,* 59 AD2d 913).

Moreover, the court's charge on identification did not meet the minimum standard laid down in *People v Whalen* (59 NY2d 273).

In instructing the jury with respect to the People's burden of proof, the court charged as follows: "In this case, the defendant did not testify. And I've already instructed you that under our law he does not have to testify. By a plea of not guilty interposed by the defendant, he denies the charges against him and puts into issue every material allegation in the indictment. The burden rests on the prosecution to prove the guilt of a defendant beyond a reasonable doubt. A defendant in a criminal case may testify in his own behalf, but his failure to do so is not a factor from which any inference unfavorable to him may be drawn".

The general statement that "[t]he burden rests on the prosecution to prove the guilt of a defendant beyond a reasonable doubt" juxtaposed with the instruction that no unfavorable inference can be drawn from the failure of a defendant to testify, in the context of the charge, did not convey with sufficient clarity the requirement that the prosecution must prove identification beyond a reasonable doubt.

While the court in *People v Whalen* (*supra*, p 279), stated, "[a] Judge who gives a general instruction on weighing witnesses' credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law", the court went on to state (*People v Whalen, supra*, p 279): "[T]his court considers it advisable to comment that the better practice is to grant a defendant's request and give the expanded charge * * * Out of a sense of fairness, attention should also be drawn to the possible unreliability of identification testimony. The First and Second Departments have held that a detailed charge should be given when identification is in controversy (see, e.g., *People v Rodriquez*, 61 AD2d 914 [1st Dept]; *People v Gardner*, 59 AD2d 913 [2d Dept]). Indeed, after deciding the present case (*People v Whalen*), the Third Department considered another identity/alibi case and concluded, 'We deem the court's instructions on identification to be legally sufficient but, upon the retrial, which we determine to be necessary, it is indicated that a more thorough instruction on identification be given in the interest of justice.' (*People v Landor*, 92 AD2d 625, 626.) New York's trial courts are encouraged to exercise their discretion by giving a more detailed identification charge when appropriate. Certainly, no undue burden is placed on the court in complying with a defendant's request for such a charge". While, as the dissent notes, the trial court delivered instructions concerning "the necessity of focusing upon the quality of the witnesses' testimony by evaluating their credibility", the real issue was not whether Gross was truthful, but whether or not she was *mistaken* (see *People v Daniels, supra*, p 400). An appropriate identification charge would have focused the jury's attention on the need for weighing the accuracy and reliability of the evidence on that issue.

In our view, the proof of guilt in this case, unlike that in *People v Smith* (100 AD2d 857), was not so overwhelming as to render the errors in the charge harmless.

In reaching an opposite conclusion, our dissenting colleagues have considered matters dehors the trial record. Gross' testimony at the *Wade* hearing concerning her observation of the "chipped" tooth was never before the trial jury. At the *Wade*

hearing, Gross acknowledged that *the police asked her what the perpetrator looked like,* and while she "visualized" that he had "a chipped tooth", she did not remember telling the officers about it, but at the trial, Gross made no mention of "a chipped tooth".

We find that defendant's remaining contention lacks merit. We agree with our dissenting colleagues that the court's supplemental charge, given after the jury announced a deadlock, was not coercive. O'Connor, Brown and Lawrence, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment of conviction, with the following memorandum, in which Thompson, J. P., concurs. The majority is of the view that certain aspects of the trial court's charge to the jurors, specifically its alleged minimization of the inherent weaknesses in the complainant's identification testimony and the emphasis placed upon the stengths of the People's case, mandate a reversal of the judgment of conviction. I respectfully disagree.

The standard governing the sufficiency of a charge pertaining to an identification issue has been set forth by the Court of Appeals in *People v Whalen* (59 NY2d 273, 279). While noting that it constitutes "the better practice" to acquiesce in a defendant's request for an expanded charge with respect to the issue of identification, the Court of Appeals therein found no legal error in the issuance of a "minimal charge that was technically correct". By way of enunciating a guideline, the court commented that "[a] Judge who gives a general instruction on weighing witnesses' credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law. No cognizable prejudice accrues to any party" (*People v Whalen, supra,* p 279; accord *People v Smith,* 100 AD2d 857, 858).

In evaluating the sufficiency of a charge, the governing criterion is "whether the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at [its] decision" (*People v Russell,* 266 NY 147, 153; see, also, *People v Vera,* 94 AD2d 728, 729; *People v Gardner,* 59 AD2d 913). In my view, the court's instructions in the instant case constituted adequate compliance with both standards.

Criminal Term delivered extensive instructions emphasizing the presumption of innocence of the accused, the prosecution's burden of proving every element of the crimes charged beyond reasonable doubt, and the necessity of focusing upon the quality of the witnesses' testimony by evaluating their credibility. Furthermore, the court's charge clearly indicated that defendant had raised an issue of misidentification, specifically with regard

to the complainant's opportunity to observe her assailant and as to whether prevailing conditions enabled her to reasonably identify defendant as the perpetrator. The court then immediately reminded the jury that defendant had, by virtue of his plea of not guilty, put into issue every material allegation of the indictment and that the burden rested on the prosecution to prove defendant's guilt beyond a reasonable doubt.

In a marked contrast to the instant case are numerous cases where detailed instructions regarding identification testimony were deemed necessary in view of a patently weak identification by the complaining witnesses or the defendant's presentation of a plausible alibi defense (see, e.g., *People v Rudd,* 100 AD2d 857; *People v Knowell,* 94 AD2d 255; *People v Daniels,* 88 AD2d 392; *People v Gaines,* 80 AD2d 561; *People v Rothaar,* 75 AD2d 652). In those cases, the identification evidence was subjected to affirmative assaults on its reliability, thereby creating a cogent need for additional guidance from the trial court in order to apprise the jurors of the more complex reasoning process involved where inculpatory evidence is either controverted or unreliable.

In the instant case, defendant proffered no defense which would have weakened the impact of the complainant's identification testimony. Notwithstanding the fact that, prior to trial, defendant served a notice of alibi with intent to call two named witnesses in support of his defense, defense counsel rested at the conclusion of the People's case without having summoned a single witness. Moreover, the certainty of the complainant's identification was not effectively impugned during the course of the trial. The complainant's view of her assailant, although brief, was at very close range in an adequately lit elevator. Although she was wearing glasses which got alternately darker or lighter depending upon their exposure to light, the complainant's vision was in no way obstructed at the time of the attack. The consistency of this witness' testimony at trial and at the *Wade* hearing with regard to the clothing worn by her assailant provides evidence of her reliability. Although the complainant failed to mention any of defendant's identifying dental features in her interviews with the police, she mentioned at both the *Wade* hearing and the trial that her attacker had what she described at the *Wade* hearing as a chipped tooth or what she described at trial as a small space between his teeth. Given the acuity of the complainant's observations, the consistency of her testimony at the pretrial hearing and at trial, and the strength of her identification, the trial court's failure to have more explicitly instructed the jurors as to the factors to consider in

evaluating the identification testimony was, at worst, harmless error. Under the circumstances of this case, there was no need for additional guidance by the trial court.

Although the court did not marshal the evidence or restate the facts at considerable length, its discussion was more substantive than a mere "bare bones" charge (cf. *People v Mabry,* 58 AD2d 897), and did adequately explain the application of the law to the facts. The material factual and legal issues were made abundantly clear to the jurors by virtue of the joint efforts of the court and competent counsel in the course of their summations. Inasmuch as the trial was of brief duration and involved the testimony of only two witnesses, further reference to the evidence was not necessary and the court's failure to be more descriptive clearly did not serve to deprive defendant of a fair trial (*People v Culhane,* 45 NY2d 757, 758, cert den 439 US 1047).

In my view, the majority's contention regarding the one-sidedness of the court's instructions is unpersuasive and unsupported by the record. "While it may be asserted that the instructions given by the trial court were minimal, convictions are not to be set aside because, on reflection in tranquility, better charges could have been composed" (*People v Yanik,* 43 NY2d 97, 100).

Defendant's contention that the supplemental charge, whereby the court encouraged the jurors to continue deliberations after they had announced a deadlock, resulted in a coerced verdict, is untenable. It is beyond cavil that "a trial court may properly discharge its responsibility to avoid mistrials by encouraging jurors to adhere to their oaths and make one final effort to review the evidence and reach a verdict one way or the other" (*People v Pagan,* 45 NY2d 725, 727). Efforts on the part of a trial court to achieve a verdict by pointing out that there is nothing singularly esoteric about a case or the jury's function are permissible (*People v Jackson,* 68 AD2d 636, 639).

In this case, the approach assumed by the Trial Judge was not inherently coercive or improper (cf. *People v Perfetto,* 96 AD2d 517, 518). Although the court mentioned the problems attendant upon a retrial, at no time did it emphasize the absolute need for a verdict at the expense of the individual jurors' judgment (cf. *People v Demery,* 60 AD2d 606). The following language of the Court of Appeals is likewise dispositive of the issue raised herein: "Here, although the approach of the Trial Judge may not have been ideal, in essence he simply asked the jury to exert its best efforts and renew deliberations. No jurors were impermissibly singled out for noncompliance with the majority. None were improperly threatened, nor was it even suggested that the

jury would be forced to continue deliberations indefinitely without any outside communication should agreement still elude them following a renewal of their efforts to reach a verdict" (*People v Pagan, supra,* p 727). Inasmuch as the arguments raised by defendant are devoid of merit, I vote to affirm the judgment of conviction.