■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARSHAI ALLAH, Appellant.—Levine J. Appeal from a judgment of the County Court of Washington County (Berke, J.),

rendered October 5, 1983, upon a verdict convicting defendant of the crime of assault in the second degree.

The charge against defendant of assaulting a correction officer (Penal Law § 120.05 [3]) arose out of a prison riot at Great Meadow Correctional Facility on February 20, 1982. Approximately 400 inmates, including defendant, had attended a movie in the facility's auditorium. At the conclusion of the film, the inmates began to file out under the supervision of about 12 correction officers. Toward the rear of the auditorium, two inmates became involved in a scuffle and correction officers responded to quell the incident but were being impeded as they made their way to the two combatants. At this point, in the words of one correction officer, "The whole place exploded." A general uprising occurred and the prison staff present were subjected to successive attacks by multiple inmates. A number of officers received serious and incapacitating physical injuries. Defendant and some eight other inmates were positively identified and charged in connection with the various assaults against officers in the course of the melee. After an individual jury trial, defendant was convicted of asssault in the second degree as indicted.

The first point raised by defendant on this appeal is that, while there was testimony that he had repeatedly struck and injured Correction Officer William Huzar during the riot, there was no evidence and, hence, no basis except sheer speculation for the jury to have found that defendant acted with the specific intent "to prevent a peace officer * * * from performing a lawful duty", a necessary element of a violation of Penal Law § 120.05 (3), the only crime for which defendant was indicted. We disagree.

The evidence against defendant consisted of testimony of Correction Officer Marshall Williams and of the victim of the assault, Officer Huzar. Williams testified that when the fracas first started the company of inmates over which he had charge was in the process of leaving the auditorium. He repeatedly ordered the two inmates initially involved, one of whom was inmate Glenn Cuffey, to stop, but to no avail. He then observed another officer being attacked and attempted to assist him. He looked up and observed Huzar on the floor in a rear corner of the auditorium, with defendant over him, striking his head against the wall, and inmate Cuffey biting Huzar in the area of the stomach. Defendant and Williams had direct eye contact, at which point defendant abandoned his attack on Huzar and came after Williams. Huzar testified that in the initial stage of the disturbance, he saw defendant and Cuffey

jumping over rows of seats in the auditorium toward the rear. He then came to the aid of Sergeant Arthur Byers, who was being beaten by several inmates, including Cuffey. As he did so, Cuffey turned on Huzar and struck him twice, then looked at defendant and, pointing to Huzar, told defendant to "kill this one, he is over here". As defendant started toward him, Huzar was tackled, brought down and repeatedly struck by Cuffey until he lost consciousness. The next thing Huzar remembered was defendant sitting on his chest, striking blows to his head, and Cuffey biting his hand.

In our review of the sufficiency of the foregoing evidence to establish the requisite specific intent, the necessarily circumstantial evidence of defendant's state of mind must be viewed in the light most favorable to the People, who are entitled to the benefit of every reasonable inference to be drawn therefrom (*People v Kennedy,* 47 NY2d 196, 203; *People v Christopher,* 101 AD2d 504, 534, *revd on other grounds* 65 NY2d 417). It was the lawful duty of Huzar and of each of the other correction officers present to suppress the uprising and to come to the aid of their fellow officers under attack. The jury certainly could have concluded that defendant heard the direct order to Cuffey to stop engaging in the disturbance at the outset and that the motive of Cuffey and defendant in jumping over seats toward the rear of the auditorium was to participate in the general disorder then breaking out. The jury could also have found that Cuffey attacked Huzar in response to the latter's attempt to protect Byers and that Cuffey initially summoned defendant to aid him. Additionally, the evidence also established that, immediately after subduing Huzar, defendant charged at another correction officer. Under all of the foregoing circumstances, it was readily inferable that defendant and Cuffey not only intended to inflict injuries upon Huzar, but also shared a common purpose to prolong the uprising and forestall its suppression through their indiscriminate assaults against the officers present. Such a common purpose clearly establishes the requisite intent to prevent a peace officer from performing a lawful duty. We have previously upheld convictions for the commission or attempted commission of the crime defined in Penal Law § 120.05 (3) where, as here, such a dual intent could reasonably be deduced from the circumstances surrounding the assaultive conduct toward a peace officer (see, *People v Early,* 85 AD2d 752, 753; *see also, People v Roberts,* 91 AD2d 1099, 1100; *People v Robinson,* 71 AD2d 779, 780; *People v Moore,* 47 AD2d 980, 981).

Next, defendant seeks reversal on the basis of various errors in County Court's instructions to the jury. None of the claimed errors, however, was preserved for appellate review by an appropriate exception or request to charge (CPL 470.05 [2]), and only one merits serious consideration for the exercise of our statutory discretion to reverse in the interest of justice (CPL 470.15 [3] [c]; [6] [a]). That is the failure of County Court to charge specifically and without prompting by the defense on the necessity of careful scrutiny of identification evidence, and that defendant's identity as the perpetrator must be established beyond a reasonable doubt *(see, People v Whalen,* 59 NY2d 273, 278-279; 1 CJI [NY] 10.01). Undeniably, identification was a major issue. The prosecution witnesses identif d defendant through their prior acquaintance with him, their direct confrontational observations during the incident and by the distinctive sweater they saw him wearing over his prison uniform while the pertinent events were taking place. In his testimony, defendant admitted being present in the auditorium at the time of the riot but denied that he participated and that he wore any such sweater. In its instructions on the credibility of witnesses, the court specifically stated that a witness's testimony may be unreliable not only because of untruthfulness but also by reason of defective observation or memory. The jury was also charged at length on the burden of the prosecution to prove every element of the crime charged, including that "the Defendant struck William Huzar in the face and head with his fists and hands". County Court then summarized in detail the opposing evidence on identification, following which the jury was specifically instructed "[c]oncerning the identification of this Defendant as a person who allegedly assaulted Officer Huzar", to evaluate the ability and opportunity to observe the prosecution witnesses in various pertinent respects.

While it may have been preferable for County Court to have also given the suggested charge on identification, we think the foregoing instructions, given in the context of an accurate summary of the evidence for and against defendant's identification as one of the victim's assailants, were sufficient to direct the jury to focus on the importance of the issue, to evaluate the prosecution evidence related thereto and to apply the proper standard of proof. On review of the sufficiency of jury instructions, "[t]he test is always whether the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at decision" *(People v Russell,* 266 NY 147, 153). The charge as given with

respect to the identification issue adequately performed that function and, hence, any deficiency did not deprive defendant of a fair trial on that issue. Indeed, in *People v Smith* (100 AD2d 857, *lv denied* 62 NY2d 810) instructions virtually identical to those given here were upheld, despite the defendant's having preserved the issue by a specific request to charge on identification *(see also, People v Richardson,* 109 AD2d 853, 854).

Defendant's remaining points are equally unpersuasive and do not require extended discussion. There were exigent circumstances which justified the method used to identify the inmates who participated in the assaults through the photographic array and sufficient factors to permit County Court to have concluded that it was not so suggestive as to create a substantial likelihood of irreparable misidentification *(see, People v Coleman,* 114 AD2d 906). In any event, the record clearly establishes the existence of an independent basis for each officer's in-court identification. Likewise, viewing the record in its entirety, defendant was represented vigorously and with reasonable competence by his counsel under the viable theory of defense which was pursued. Whatever errors may have been committed in failing to object, request instructions or electing one trial strategy over another, ineffective representation was not established here under any of the criteria currently applied *(see, Strickland v Washington,* 466 US 668, 686-691; *People v Satterfield,* 66 NY2d 796, 799-800; *People v Reddy,* 108 AD2d 945, 948). Accordingly, the judgment should be affirmed.

Judgment affirmed. Mahoney, P. J., Casey, Mikoll, Yesawich, Jr., and Levine, JJ., concur.