■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN PEREZ, Appellant.—Judgment of the Supreme Court, New York County (Jay Gold, J., at trial; Frank Blangiardo, J., at sentencing), rendered August 3, 1987, convicting defendant, after trial by jury, of robbery in the first degree and sentencing him, as a predicate felon, to an indeterminate prison term of from 4½ to 9 years, is affirmed.

Defendant Edwin Perez, a resident of the Hudson Hotel, entered the room of Olimpio Pimenthal, another resident, and demanded money. When Pimenthal, who had known defendant for two years, responded he had none, defendant pulled out a knife and stabbed Pimenthal. After putting the knife to Pimenthal's neck, defendant left with money, a radio and the victim's shoes. Pimenthal went to the lobby, bleeding from the arm and neck. Herman Henderson, the night manager of the hotel, and also employed as a treatment aide for the Department of Mental Hygiene, called the police. Shortly thereafter, defendant came down to the lobby and told Henderson "I did it. * * * I robbed him and before you can arrest someone, you have to prove the charges".

Initially, the defendant contends that the trial court's refusal to instruct the jury that the People had the burden of proving his identification beyond a reasonable doubt mandates a reversal. However, after the charge, defense counsel stated, "I have a request that your Honor and I thought you would have charged this more specifically, that is, concerning identification, that I ask the jury be instructed that also by that they find that it was this defendant, Mr. Perez who was the one". After the court responded that "it seems to me that it is not an eyewitness identification case" and noted that the defendant was well known to the victim and that, within minutes, an independent bystander heard the defendant confess, defense counsel said, "I would except to your Honor's ruling. I can get the standard charge being charged concerning the circumstances that this occurred in a room with the lights out" and further, "[t]he complainant's ability to perceive at that time, I believe in some questions, I would just except to your Honor's ruling in any event".

This colloquy is reproduced in some detail to convey the obvious understanding of the court that defendant was asking for a special instruction on identification which would marshal the factors for the jury (see, 1 CJI[NY] 10.01-10.20, at 580-605). Thus, defense counsel noted the factors of the lights being out, the complainant's ability to perceive at that time, etc. Defendant did *not*, however, advance his present contention—that

the court failed in its charge to instruct the jury that defendant's identity had to be proved by the People beyond a reasonable doubt. Thus, defendant has not preserved this issue for appellate review (see, People v Whalen, 59 NY2d 273, 280).

The record is clear, in any event, that while the court did not instruct the jury that identification must be proved beyond a reasonable doubt *in haec verba*, it did instruct the jury that all elements of the crimes charged, which included the element of identity, must be proved beyond a reasonable doubt. The court told the jury the defendant was indicted by a Grand Jury but the prosecutor had the "responsibility to offer evidence to prove guilt". The court further informed the jury that "[t]he burden of proof in a criminal case rests on the People and that burden never shifts from the People to a defendant * * * who * * * is presumed to be innocent". The court noted that "[i]t is the burden of the People to prove a defendant guilty beyond a reasonable doubt", and then defined the reasonable doubt standard for the jury.

When the court reviewed the first count of the indictment charging defendant with first degree robbery, it broke down that count into six elements and reminded the jury that "the People are required to prove from all of the evidence beyond a reasonable doubt each of the following six elements". The court then referred to *the defendant* in its discussion of each of the elements, explaining, for example, that "[t]he People are required to prove beyond a reasonable doubt that the defendant stole the personal property" and that "the defendant stole the property with the intent to appropriate it to himself" and that "the defendant stole the property from Olimpio Pimenthal and Olimpio Pimenthal was an owner of the property", and so on throughout the other elements.

In a similar fashion, with respect to the second count of the indictment, i.e., burglary in the first degree, the court again noted, "before you may find the defendant guilty of this crime, the People are required to prove from all of the evidence beyond a reasonable doubt, each of the following six elements", and once more referred to *the defendant* in its discussion of the elements of this crime.

Thus, contrary to defendant's present contention, the charge, taken as a whole, conveyed to the jury that the prosecutor had the burden of proving identification beyond a reasonable doubt (see, People v Whalen, supra, at 279; People v [Jasper] Walker, 125 AD2d 732) "Because of the overwhelming evidence of identity, the court's identification charge, although

not as detailed as the defense requested, was proper as it provided an accurate statement of the law" *(supra)*.

The authority cited by defendant does not mandate a contrary conclusion. In *People v Ramirez* (128 AD2d 734), *People v Hollis* (106 AD2d 462) and *People v Rodriquez* (61 AD2d 914), the issue was whether an expanded identification charge was necessary marshaling the facts for the jury because of the special circumstances in each. Here, there was no need for such an expanded charge.

Contrary to defendant's further contention, the court did not err in addressing alone the only dissenting juror nor did the so-called *Allen* charge *(Allen v United States,* 164 US 492) coerce the jury into reaching a guilty verdict. After approximately seven hours of deliberation, the court received a note from the jury that 11 of them had reached "a unanimous decision of guilty" on the robbery in the first degree count but, "one juror is adamant in their *[sic]* decision and unfortunately cannot be reasoned with. This juror requests to be dismissed from the case." The court informed counsel at a bench conference that Mr. Hector Policiano "would like to speak with me". The court advised counsel it would speak to Mr. Policiano and then read the jury the standard charge directing it to continue to deliberate. Defendant did not object to this procedure. Instead of being coercive and improper, review of the colloquy between juror Policiano and the court shows the court demonstrated respect for his position and, in fact, indicated the juror was entitled to "stick to your guns". After Policiano said "I just feel that I can't believe Mr. Pimenthal's testimony, I believe its not a stable state of mind", the court told him: "Mr. Policiano, let me indicate to you that I think the best course, of course, I'm not in any way quarreling with your decision in this matter, please don't understand me to be doing that. I think you ought to approach this in the traditional way because it is not at all uncommon for a juror to disagree, that's commonplace. What I propose to do is bring you all out and to instruct you to continue the deliberations without giving up your views. If you think, after thinking about it some more you think that's the right thing to do, that's the best approach. Mr. Policiano, I think once you hear what I've got to say to all of you, as I indicated, if you want to stick to your guns, that's your business. Mr. Policiano, if you will be patient, listen to what I have to say to the rest and than as a group, I'll ask that you go back. We'll see what happens, okay?"

The juror here had initiated the discussion with the court

*(cf., People v Perfetto,* 96 AD2d 517, 518) and a fair reading of the court's remarks to him, repeated in their entirety above, impels the conclusion that, rather than directing the juror's "capitulation", the court gave significant moral support to him in adhering to his views, if that was "the right thing to do".

After letting the entire jury know that he had spoken to Mr. Policiano, and that "I don't want to be understood as pressing or pressuring in any fashion", the court told the jury:

"Each of you must agree in that verdict, the verdict must represent the considered judgment of each juror.

"The verdict must be unanimous, it's your duty to consult with one another and to deliberate together with a view to reaching an agreement if you can do so without violence to individual judgments. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors.

"During the course of your deliberations, do not hesitate to re-examine your views and change your opinion if otherwise convinced by the evidence. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

"You are not partisans, you are judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case. With this view, I direct that you continue your deliberations. One final thing I should point out, if this jury disagrees, this case will have to be retried.

"There is no reason in the world why either you or I should believe that the next jury is going to do a better job than you folks. You are the ones that the lawyers picked, they decided that you could do this job properly.

"I'm asking that you go back, having in mind every word I have just said and continue your deliberations."

Again, the court's charge to the jury is repeated at some length to show it simply asked the jury to use its best efforts to renew deliberations. It did not single out Policiano for opprobrium because of his noncompliance with the majority, and it did not threaten the jury as a whole. Contrary to defendant's contention, the court's noting that the case would have to be retried, and there was no reason to believe the next jury would be better suited, was not tantamount to a direction that a verdict must be returned. The court simply reassured the jury that the lawyers picked them to do the job and there was no reason to believe that the next jury would do a better

job (cf., *People v Demery,* 60 AD2d 606; *People v Henry,* 56 AD2d 610, 611). Concur—Sullivan, J. P., Asch and Kassal, JJ.

Rosenberger and Rubin, JJ., dissent in a memorandum by Rubin, J., as follows: I do not agree that special circumstances warranting an expanded instruction regarding the evaluation of identification evidence are absent in this case. The darkened condition of the room where the robbery took place, complainant's abuse of alcohol illustrated by his apparently inebriated condition in the courtroom, his admitted practice of drinking before retiring for the night, the time of the attack (approximately 12:30 A.M.) and its perpetration in a residential counselling facility serving persons with mental conditions and alcohol or drug impairment are all factors which cast doubt on the reliability of the complainant's identification of defendant. While a minimal identification charge may be technically correct, it is my opinion, in accordance with the ruling in *People v Whalen* (59 NY2d 273, 279), that the circumstances warrant an expanded charge, especially where evidence of identity is less than overwhelming (compare, *People v [Jasper] Walker,* 125 AD2d 732; *People v Ramirez,* 128 AD2d 734, 736).

With respect to defense counsel's request for further instructions to the jury regarding the identification evidence, it should be noted that the request was specific and while it "was not as precise as it might have been, we consider it sufficient to have elicited an instruction by the court on the issue of identification" (*People v Gardner,* 59 AD2d 913). Accordingly, I would reverse the judgment and remand the matter to Supreme Court for a new trial.