■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD JACKSON, Appellant.—Levine, J. Appeal from a judgment of the County Court of Rensselaer County (Ceresia, Jr., J.), rendered September 22, 1989, upon a verdict convicting defendant of the crimes of burglary in the first degree (two counts), rape in the first degree, robbery in the second degree and sexual abuse in the first degree.

Defendant was indicted in January 1988 on two counts of burglary in the first degree, rape in the first degree, robbery in the second degree, attempted sodomy in the first degree and sexual abuse in the first degree. The charges contained in the indictment stemmed from a December 4, 1987 incident in which the victim was attacked at her fiancé's apartment in the City of Troy, Rensselaer County.

Following a *Wade* hearing, the matter proceeded to trial, where the victim testified regarding the details of the attack and identified defendant as her assailant. In response to the People's proof, which was based almost entirely on the victim's testimony, the defense presented two alibi witnesses who

testified that defendant was with them at the time the subject crimes were committed.

At the close of trial, the jury found defendant guilty on all charges contained in the indictment, except for attempted sodomy which was withdrawn by the prosecution. County Court then sentenced defendant as a second felony offender to an indeterminate term of imprisonment of 12½ to 25 years for each of the two counts of burglary in the first degree and rape in the first degree, 7½ to 15 years for robbery in the second degree and 3½ to 9 years for sexual abuse in the first degree. The sentences for burglary were to run concurrently and those for rape, robbery and sexual abuse to run consecutively to each other and to the burglary sentences. Defendant's total sentence was ultimately reduced, pursuant to statutory mandate (Penal Law § 70.30 [1] [c] [iii]), to an indeterminate term of 25 to 50 years. This appeal followed.

Defendant's main contention on appeal is that County Court committed reversible error by refusing to give a specific identification charge. In support of this claim, defendant sets forth a twofold argument; namely, that County Court's charge was legally insufficient since it did not specifically address "identification", and since it did not contain language cautioning the jury as to the unreliability of identification testimony and/or assisting the jury in its evaluation of such testimony. Initially, we reject defendant's contention that the absence of any reference to "identification" in County Court's charge requires reversal. A review of the charge establishes that the court twice instructed that the People had the burden of proving beyond a reasonable doubt that defendant was the person who committed the crimes charged. This was clearly an accurate statement of the law (see, People v Whalen, 59 NY2d 273, 279; People v Andrews, 109 AD2d 939, 941) and, in our view, sufficiently conveyed to the jury that the People were required to prove the *identification* of defendant as the perpetrator.

We likewise reject defendant's claim that County Court's failure to give an expanded identification charge warrants reversal. We recognize that this was an appropriate case for a detailed identification charge, providing the jury with criteria to apply in its evaluation of the victim's identification testimony (see, 1 CJI[NY] 10.01, at 581-583; see also, People v Whalen, supra; People v Landor, 92 AD2d 625, 626; People v Gaines, 80 AD2d 561; People v Gardner, 59 AD2d 913). Had such an expanded charge been requested and denied, we would be inclined to reverse because the victim's identification

testimony was the only evidence connecting defendant to the crimes charged. However, at the charge conference, defendant's counsel only requested that the jury be separately instructed as to misidentification and, specifically, that it be charged that " 'The defense herein contends that the wrong man is accused of this charge. You must be satisfied beyond a reasonable doubt as to the identity of the defendant as having been the individual responsible for the conduct charged in the indictment herein'." In substance, County Court granted counsel's request by instructing the jury, first in connection with the alibi charge, that "[t]he burden is on the People to prove that [defendant] is the person who, in fact, committed the crime", and then again that "the People must * * * prove to your satisfaction beyond a reasonable doubt that the defendant is the person who committed the crime before you may find him guilty". The court then repeated the latter instruction, stating that "the People are required to establish * * * beyond a reasonable doubt all the essential elements of [each crime charged] and that the defendant is the person who committed it". Thus, it is clear that defendant did not specifically request the charge which he now claims was required and that, in fact, the charge he did request was in effect granted. Under these circumstances, we conclude that the issue was not properly preserved for our review (see, CPL 470.05 [2]; *People v Mayo*, 136 AD2d 748, *lv denied* 71 NY2d 971; *People v Andrews*, 109 AD2d 939, *supra; see also, People v Austin*, 161 AD2d 275, *lv denied* 76 NY2d 852). Further, we decline to reverse in the interest of justice (see, CPL 470.15 [6] [a]) because the victim's strong identification testimony, which remained unshaken on cross-examination, established that she had an ample opportunity to view defendant's face at close range both prior to the attack and during the initial struggle.

Defendant also contends that there was insufficient proof of physical injury to sustain his conviction on count one of the indictment charging burglary in the first degree (see, Penal Law § 140.30 [2]). We disagree. The question of whether the victim suffered "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]) was one properly submitted to the jury (see, Matter of Phillip A., 49 NY2d 198, 200; *People v Rollins*, 120 AD2d 896, 897, *lv denied* 68 NY2d 773; *People v Coward*, 100 AD2d 628). The victim testified that during the attack, defendant placed a belt around her neck and pulled it "extremely tight". She stated that "I could feel my lungs trying and trying to pull air in. * * * [I]t hurt so much and I was still getting no air." Additionally, the People submitted

photos of the victim taken after the attack which showed red marks on her neck, and a nurse from the hospital where the victim was taken testified that she had bruises on her neck, upper arm, wrist and thighs. Based upon the foregoing, the jury could have reasonably found that the victim suffered a physical injury and, thus, defendant's conviction for burglary in the first degree should be sustained *(see, People v Greene,* 70 NY2d 860, 863; *People v Rollins, supra; People v Mattison,* 97 AD2d 621, 622).

Finally, we find merit in defendant's claim that County Court erred in imposing consecutive sentences for his rape and sexual abuse convictions. A review of the victim's testimony establishes that the rape and the sexual abuse were not the result of disparate and separate acts *(see,* Penal Law § 70.25 [2]; *see also, People v Williams,* 141 AD2d 783, 785-786, *lv denied* 72 NY2d 1051; *cf., People v Brathwaite,* 63 NY2d 839, 843), but that the acts constituting the sexual abuse were an integral part of the rape *(see, People v Smiley,* 121 AD2d 274, 275, *lv denied* 68 NY2d 817; *People v Hatch,* 105 AD2d 549, 551). Despite the People's assertion to the contrary, there was no evidence that any sexual abuse occurred outside of the rape *(see, People v Underwood,* 52 NY2d 882, 883). Accordingly, defendant's sentences for rape and sexual abuse should run concurrently.

We reach a different conclusion, however, with respect to defendant's sentences for rape and burglary. It is clear from the record that the rape and the burglaries were separate and distinct acts and, thus, County Court's imposition of consecutive sentences was appropriate *(see, People v Day,* 73 NY2d 208, 211-213; *People v Brathwaite, supra).*

We have examined defendant's remaining contentions and find them to be without merit.

Judgment modified, on the law, by reversing so much thereof as directed defendant to serve consecutive terms of imprisonment for the convictions of the crimes of rape in the first degree and sexual abuse in the first degree; said sentences for these crimes to run concurrently; and, as so modified, affirmed. Casey, Levine and Harvey, JJ., concur.

Mahoney, P. J., and Yesawich, Jr., J., dissent and vote to reverse in a memorandum by Yesawich, Jr., J. Yesawich, Jr., J. (dissenting). We respectfully dissent.

The sole issue at trial was whether defendant was the individual who robbed and raped the victim. The only evidence connecting defendant with the crime was the victim's

testimony. She stated that she first saw her assailant outside her fiancé's apartment door where she spoke with him briefly. He was wearing a jacket with an acrylic furlined hood which covered his head and much of his face. She avoided looking directly at him because he had a nervous facial tic or twitch. When she next saw him two hours later and immediately prior to the rape, he was still wearing the concealing jacket. To her knowledge, he never removed this article of clothing. During the ensuing attack, she glimpsed the perpetrator's face once from an angle. Shortly thereafter she nearly lost consciousness and because he placed a blanket over her head, she never again saw the man's countenance. That the victim— who is somewhat nearsighted, slightly astigmatic and was not wearing her glasses at the time—had less than ample opportunity to see the assailant's features is buttressed by the fact that she identified defendant as the man who raped her only after examining five separate photo arrays, three of which included different pictures of defendant.

We are of the view that an expanded identification charge was requested and essential, given that the victim never had a clear and unobstructed view of her attacker and defendant's identification occurred during an arguably tainted photo array. At the charge conference, defense counsel specifically asked for the "wrong man charge * * * relative to misidentification". Counsel then outlined the substance of the charge defendant was seeking and concluded, "I believe separate and apart from the alibi defense there is a defense relative to misidentification, which has been raised herein. The jury should be separately instructed as to that." This language was sufficient, we believe, to constitute a request for an expanded identification charge (see, People v Gardner, 59 AD2d 913; compare, People v Andrews, 109 AD2d 939, 941).

In light of counsel's request and the fact that the evidence connecting defendant to the crime is other than overwhelming, County Court should have provided the jury with detailed instructions regarding the evaluation of the eyewitness's identification testimony (see, People v Whalen, 59 NY2d 273, 279; People v Knowell, 127 AD2d 794; People v Hollis, 106 AD2d 462, 465; People v Rudd, 100 AD2d 857; People v Landor, 92 AD2d 625, 626; compare, People v Allsbrook, 105 AD2d 467). As it did not, defendant's conviction should be reversed and a new trial ordered.