■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES MOSS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Lipp, J.), rendered April 24, 1989, convicting him of robbery in the second degree and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was charged, *inter alia,* with two separate robberies of a grocery store located on Nostrand Avenue in Brooklyn, New York, the first occurring on July 5, 1988, and the second on July 8, 1988. On July 12, 1988, four days after the second robbery, the store's owner, Yah Yah Alzubidi, was approached on the street and threatened with a gun by the defendant. Alzubidi began screaming for help and ran up to a police car that was stopped nearby at a red light. A police officer in the patrol car observed Alzubidi pointing at the defendant who had a revolver in his hand. The defendant started running so the police gave chase and arrested him.

The confrontation on July 12, 1988, on the street between the defendant and Alzubidi was witnessed by Nasser Saleh, a cashier employed at the grocery store. From his vantage point in the store, Saleh had observed the defendant walk past the store with a gun in his hand just moments before the arrest.

The police had previously interviewed Saleh about the robbery on July 8, 1988. On that date, he told the police that he was present in the store during the robbery and said that the defendant, whom he knew by the street name "V.C." was one of the robbers. He provided the police with a description of the robber. Indeed, both Alzubidi and Saleh testified that the defendant was well known to them because he had been a regular customer, coming into the store two to three times a week for several months preceding the robberies. The defendant, testifying on his own behalf, confirmed that he was frequently in the store and admitted that he took two six-packs of beer on July 5. However, he denied having a gun and denied being present in the store on July 8, 1988, when the second robbery occurred. He claimed that he was with his girlfriend on July 8, but she was not called as an alibi witness.

On July 12, after the arrest, Alzubidi went with the police

to the station where he identified the defendant as one of the robbers. Saleh remained in the store and did not identify the defendant until the following day when the police returned to the store and showed him a mug shot.

The prosecution served a timely CPL 710.30 notice alerting the defendant to the fact that both Alzubidi and Saleh would give identification testimony during the trial, but the notice failed to include any mention of the photographic identification. Nonetheless, the defendant moved to suppress identification testimony as part of his request for omnibus relief. The court summarily denied the motion believing that there was no police action involved. However, on the eve of trial, the defense counsel discovered that a photographic identification had occurred and he sought an order precluding Saleh from testifying. The defense counsel mistakenly represented to the court that defendant had never moved to suppress identification evidence. When the court learned of the photographic identification, it ordered a hearing prior to Saleh's testimony at the trial. After learning the chronology of events, the court suppressed in-court identification testimony by Saleh, but permitted him to say that the armed man he observed on the street on July 12, 1988, was one of the robbers on July 8, 1988. This ruling is challenged on appeal.

The critical inquiry is whether the court properly allowed Saleh to testify that the individual he observed walking past the store with a gun in his hand on July 12, 1988, was the same individual that had robbed the store on July 8, 1988. Although there is a thin line between "resemblance" and "identification" testimony, it is permissible to suppress a tainted identification while allowing the witness to describe what he observed, under appropriate circumstances (see, People v Sanders, 108 AD2d 316, affd 66 NY2d 906). We find that the court here did not act improperly in allowing such testimony by Saleh. We note that Saleh had given a description of the robber to the investigating officer long before the photographic identification procedure occurred on July 13, 1988. Accordingly, the purportedly suggestive identification procedure did not taint the witness's description (see, People v Myrick, 66 NY2d 903, 904; People v Sanders, supra), nor his perception that the person he saw on July 12, 1988, was the same person he saw on July 8, 1988. Moreover, by moving to suppress based upon the suggestive photographic identification, and obtaining a hearing and determination of that issue, the defendant waived any deficiencies in the prosecutor's CPL 710.30 notice (see, CPL 710.30 [3]). In any event, in the context

of this case, any error that attended the court's ruling was harmless in light of all the evidence properly admitted at the trial.

The defendant's contention that the court's charge on identification was inadequate because it failed to provide the jury with detailed instructions to assist them in evaluating the accuracy of the complaining witnesses' identification of the defendant as one of the perpetrators of the crime *(see, People v Daniels,* 88 AD2d 392) is without merit. Although desirable, a detailed charge on the issue of identification is not required as a matter of law *(see, People v Whalen,* 59 NY2d 273, 279; *People v Beasley,* 114 AD2d 415, 416; *People v Smith,* 100 AD2d 857, 858). "A Judge who gives a general instruction on weighing witnesses' credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law" *(People v Whalen, supra,* at 279). Sullivan, J. P., Eiber, Rosenblatt and Ritter, JJ., concur.