■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v YOUNG KIM, Appellant. [617 NYS2d 748] —Judgment, Supreme Court, New York County (Albert P. Williams, J.), rendered April 21, 1992, convicting defendant, after a jury trial, of sexual abuse in the first degree, and sentencing him to five years probation, reversed, on the law and as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

Defendant was deprived of a fair trial as a result of the prosecutor's repeated, improper attempts during cross-examination and summation to characterize him as a liar and to compel him to characterize complainant as a liar *(see, People v World,* 157 AD2d 567; *People v Dowdell,* 88 AD2d 239, 247; *People v Butler,* 185 AD2d 141, 142-144). This conduct was critical to the outcome of the case, since the key issue was the relative credibility of complainant and defendant. While any of these errors, if isolated, may have been harmless, their cumulative effect constituted prejudice, and " 'violated the prosecutor's obligation to seek justice, rather than conviction (see Code of Professional Responsibility, EC 7-13)' " *(People v Butler, supra,* at 144, quoting *People v Whalen,* 59 NY2d 273, 280-281). Concur—Ellerin, J. P., Ross, Rubin and Williams, JJ.

Asch, J., dissents in a memorandum as follows: The majority reverses a conviction in this case finding that the defendant was compelled to characterize complainant as a liar, and that he himself was improperly portrayed as a liar and as a consequence was deprived of a fair trial.

Credibility was not, as the majority asserts, a "key issue". It was the *only* issue. Identification was not disputed. Both the complainant and the defendant knew each other from the neighborhood. The defendant worked in a grocery on the very

block where complainant lived and shopped every day for weeks (if not months) before the incident.

The jury was presented with a single and simple question to decide. Was Emily A., the twenty year old complainant (nineteen at the time of the crime), sexually abused by the defendant? Or, was the defendant truthful when he testified that Emily A. was drunk and that he did not abuse her?

The complainant saw the defendant outside the grocery store at about 4:00 A.M. the day of the incident. She asked him if she could get a pint of ice cream and charge it. While she was asking this question, the defendant put his arm around her shoulder. She "shrugged" it off and walked into the store with him. As Emily A. leaned over the ice cream freezer, defendant came behind her and "pinned" her "up against the freezer". "He put his left hand as far as it could go down the front of my jeans, but it was stopped by the freezer and so when it couldn't go any further, he moved it and put it outside my pants. * * * Outside of my pants onto my crotch with this kind of a hand movement [opening and closing her hand in a grasping type motion] * * * and at the same point his right hand went under my blouse. Some of the fingers were over the strap of my bra. Some of them were under the strap of my bra and his hand was going like this as well. Both hands were going like this [moving both her hands in an open and closed fashion and squeezing in a squeezing motion]. * * * That I would say went on for about fifteen to twenty seconds and when I realized I couldn't move or that I didn't think I was going to be able to move, the first thing I did was to turn to face him and * * * his hands, his arm encircled me and he proceeded to, I guess the word would be kiss, but it was I mean there was saliva all over my face and his tongue was in my mouth and he had his arms around me and I was held there".

Ms. A. left the store, "stunned", and went home (across the street) with Gibb, a friend who had remained outside the store when she had gone in for the ice cream. Reaching her apartment, she immediately called the police and they arrived only five minutes later.

Initially, there is no question but that the testimony of the complainant, which the jury obviously credited, established beyond a reasonable doubt that defendant had sexually abused her (see, People v Malizia, 62 NY2d 755, 757, cert denied 469 US 932). Her explicit testimony about defendant's acts clearly made out the elements of the crime of sexual

abuse of which defendant was convicted. Additionally, Ms. A.'s account was substantiated by her "prompt outcry" both to her friend and the police officer *(People v McDaniel,* 81 NY2d 10, 16). Indeed, she reported the crime at the " 'first suitable opportunity' " *(supra,* at 17). This prompt report corroborated her version of what occurred in the grocery store that night.

Further, defendant asserts on appeal that complainant's claim that she was not drunk on the night in question was "inherently implausible". Emily A. testified that, except for one shot of alcohol that her cousin had ordered for her almost three hours before the attack, she had drunk only soft drinks and water during the course of the evening. Significantly, her testimony in this regard was completely corroborated by the police officer who spoke to complainant minutes after the attack. The officer, a trained observer, had no difficulty determining that Ms. A.'s companion, Gibb, was drunk; however, as to complainant herself, the officer unequivocally testified that her speech was "very clear", her posture was straight, and she did not exhibit *any* signs of intoxication. The jury, as trier of facts, had the opportunity to see and evaluate the witnesses and make its determination which was certainly supported by the evidence. This determination should be conclusive.

As can be inferred from the majority's use of our power to reverse "in the interest of justice" (CPL 470.15 [6] [a]), the specific objections which are raised by the defendant, and accepted in the memorandum for the list, were *not* objected to during the trial and are, therefore, unpreserved as a matter of law (CPL 470.05 [2]; *People v Balls,* 69 NY2d 641).

On cross-examination, when the prosecutor elicited (but did not *"compel")* from defendant the comment that the complainant was lying and later on the summation when she commented on this evidence, the defendant *did not object.* In any event, as noted, defendant and Emily A. each offered versions of the event which were completely opposed and different. The jury could believe one *or* the other, but *not* both. Even the defendant acknowledges this in his brief upon this appeal when he notes "the critical issue in dispute was which witness [complainant or defendant] was telling the truth". Defendant did not arrive at this insight just upon this appeal. Defense counsel at trial did all in his power to convince the jury that Emily A. was a liar, specifically asserting in his summation that the complainant was lying about certain details in her testimony "which indicates that she could have been lying about a lot of other things". In the face of this defense, no possible harm or prejudice accrued to defendant when, upon

cross-examination, he himself said the complainant was lying. Further, the cross-examination on this point was not hectoring or harassing and the prosecutor used the word "lie" only after defendant first introduced it.

"Q. Mr. Kim, it is your testimony that you never touched Miss A's [true name deleted] breast, you never put her *[sic]* hand down her pants, you never groped around her crotch and you never tried to kiss you *[sic]*, is that your testimony?

"A. All four, no, I didn't do it.

"Q. Everything she said is not true?

"A. *It's all lies.*

"Q. Lies, everything she said is a lie?

"A. That is right. I didn't do anything.

"Q. You are calling her a liar?

"A. Yes, she is a liar." (Emphasis added.)

This certainly was not an attempt by the prosecutor to "compel" defendant to characterize the complainant as a liar. That characterization of the complainant was volunteered and formed the heart and core of defendant's defense.

Defendant's complaint that the prosecutor characterized him as a liar by arguing to the jury in summation that defendant was the only witness with a "motive to lie", i.e., the fact that he believed he would be deported if he was found guilty, is equally without merit. Reiterating the obvious, in a case that, defendant agrees, hinges solely upon credibility and where his counsel thoroughly attacked not only the credibility of the complainant, but also her character, morality and even sanity, it was not error for the prosecutor to discuss defendant's motives to lie.

This is not a case, like those cited by the majority, where reversible error was found only because of "the cumulative effect" of repeated errors by the prosecutor "in instances too numerous to mention" where the bounds of legitimate advocacy were exceeded *(People v World,* 157 AD2d 567, 568); but, rather a case where "the prosecutor's remarks constitute fair comment in response to the defense summation" *(People v Butler,* 185 AD2d 141, 144). Further, it was not a case where the prosecutor questioned defendant about the use of aliases despite a pretrial ruling precluding such questions, where defendant was deprived of his right to confront his accusers by the use of police testimony with respect to the confession of a codefendant, where the prosecutor argued that the statement by the codefendant could be used against the defendant as

well, and where the prosecutor *"rather than confining herself to the facts of the case* and commenting fairly thereon, resorted to characterizing the defendant as a liar" *(People v Dowdell,* 88 AD2d 239, 247 [emphasis added]).

The prosecutor's remarks constituted a fair comment on the evidence in direct response to the attacks in the defense summation *(see, People v Butler, supra)* and she strictly confined herself to the facts of the case, commenting equitably and fairly on them *(People v Dowdell, supra).* Since the bounds of legitimate advocacy were not exceeded *(see, People v World, supra)* by the prosecutor, I conclude that this Court errs in reversing "on the law" and abuses its discretion, as a matter of law, in the use of our jurisdiction to reverse "in the interest of justice", and, accordingly, I dissent.