■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN GIORDANO, JOSEPH GIORDANO, and PHILIP CESTARO, Appellants. [622 NYS2d 89] —Appeals by the defendants from three judgments (one as to each defendant) of the County Court, Nassau County (Harrington, J.), all rendered September 26, 1991, convicting each defendant of promoting gambling in the first degree (4 counts) and conspiracy in the fifth degree, upon a jury verdict, and imposing sentences.

Ordered that the judgments are modified, on the law, by reversing each defendant's conviction for conspiracy in the fifth degree, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgments are affirmed, and the matters are remitted to the County Court, Nassau County, for further proceedings pursuant to CPL 460.50 (5).

Contrary to the defendants' contentions, Nassau County had geographic jurisdiction to prosecute them for promoting gambling in the first degree. The defendants, acting in concert with Bernard Rothman and certain other codefendants, participated in a bookmaking operation in Manhattan (hereinafter the Manhattan operation). On each of the dates that the defendants were charged with promoting gambling in the first degree, Rothman telephoned another bookmaking operation located in Nassau County (hereinafter the Meacham operation) to "hedge" or "lay off" a portion of the bets received by the Manhattan operation so as to limit the Manhattan operation's overall risk and enhance its potential for profit.

CPL 20.40 provides, in part:

"A person may be convicted in an appropriate criminal court of a particular county, of an offense of which the criminal courts of this state have jurisdiction pursuant to section 20.20, committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law, when:

"1. Conduct occurred within such county sufficient to establish:

"(a) An element of such offense".

Rothman's telephone conversations with the Meacham operation constituted conduct occurring in both New York and Nassau Counties (see, CPL 20.60 [1]; *People v Botta*, 100 AD2d 311, 315). That conduct was sufficient to establish an element of the crime of promoting gambling in the first degree which is defined, in relevant part, as follows:

"A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by:

"1. Engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars" (Penal Law § 225.10 [1]).

By hedging bets in Nassau County, Rothman knowingly advanced the Manhattan operation's illegal gambling activity, one of the elements of the crimes charged (see, *People v Botta*,

*supra).* Rothman's conduct materially aided the Manhattan operation by decreasing its risk of loss and enhancing its profit potential *(see,* Penal Law § 225.00 [4]).

Pursuant to Penal Law § 20.00, the defendants were accomplices of Rothman and liable for his conduct because they aided and abetted him with the mental culpability required for the commission of the offense of promoting gambling in the first degree. Consequently, Nassau County had jurisdiction to prosecute the defendants based on Rothman's conduct in that county *(see, Matter of Silvestro v Kavanagh,* 98 AD2d 833; *see also, People v Guidice,* 83 NY2d 630, 636).

The defendants' conspiracy convictions must be reversed, however, as there was legally insufficient evidence to prove the particular conspiracy charged in the indictment. Viewing the evidence in a light most favorable to the prosecution *(see, People v Contes,* 60 NY2d 620), the single conspiracy alleged was not proven beyond a reasonable doubt. The People sought to prove that the defendants and others in the Manhattan operation conspired with individuals in the Meacham operation to commit the crime of promoting gambling in the first degree. While the evidence demonstrated the existence of a conspiracy among the participants in the Manhattan operation, that was not the conspiracy charged in the indictment.

" '[T]he gist of the offense [of conspiracy] remains [an] agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant' " *(see, People v Leisner,* 73 NY2d 140, 151, quoting *United States v Borelli,* 336 F2d 376, 384, *cert denied sub nom. Cinquegrano v United States,* 379 US 960). In this case, there was no direct or circumstantial proof establishing beyond a reasonable doubt that the defendants entered into an agreement with the Meacham operation to promote gambling.

A conspirator must know of the agreement and intend to join the conspiracy *(see, United States v Townsend,* 924 F2d 1385, 1390). "The scope of [the defendant's] agreement must be determined individually from what was proved as to him" *(United States v Borelli, supra,* at 385). There was ample evidence from which an agreement to join a conspiracy involving the Manhattan operation could be inferred, but evidence that the defendants agreed to join a separate conspiracy with the Meacham operation was lacking. There was no proof that Rothman told the defendants he was hedging bets with the Meacham operation. While the defendants were Rothman's accomplices and therefore liable for the substantive offenses

charged, "the charge of conspiracy requires proof not essential to the convictions on the substantive offenses—proof of an agreement" *(Pereira v United States,* 347 US 1, 11-12; *United States v Townsend, supra,* at 1393-1394). By acting in concert with Rothman, the defendants did not necessarily enter into a conspiracy with the Meacham operation.

Further, there was insufficient evidence that Rothman himself conspired with the Meacham operation. Rather, the evidence demonstrated that the Manhattan and Meacham operations—two separate illegal enterprises—engaged in certain business transactions initiated by Rothman. The fact that those transactions may have been of benefit to both operations does not mean that a conspiracy existed *(see, United States v Townsend, supra,* at 1392).

The defendants contend that all of the eavesdropping evidence should have been suppressed because the electronic devices installed by the detectives were capable of conversion from a pen register into an instrumentality which could intercept conversations. Thus, the defendants contend that they should have been treated as eavesdropping devices, and their use permitted only after a warrant based upon probable cause was obtained *(see, People v Bialostok,* 80 NY2d 738). Since a warrant based on probable cause was not secured, the defendants contend that the evidence should have been suppressed. However, we find that the failure of the police to obtain a warrant for the initial installation of the pen registers does not require suppression of the eavesdropping evidence. The detectives obtained information from the pen registers regarding telephone numbers called during the initial period of their investigation and used it in support of their application for the eavesdropping warrant. Even if that information had been excluded, other evidence supporting the application, including evidence acquired by surveillance and undercover officers actually placing bets by calling the subject numbers, provided probable cause for the issuance of the eavesdropping warrant.

We find that the sentences imposed were appropriate under the circumstances of this case *(see, People v Suitte,* 90 AD2d 80).

We have considered the defendants' remaining contentions and find them to be without merit. Altman, Hart and Krausman, JJ., concur.

O'Brien, J. P., concurs in part by voting to reverse the defendants' convictions for conspiracy in the fifth degree and

to dismiss that count of the indictment, and dissents in part by voting to reverse the defendants' convictions for promoting gambling in the first degree and to dismiss the indictment in the following memorandum, with which Santucci, J., concurs. This appeal involves illegal gambling operations in New York and Nassau Counties. Louis Cavalieri a participant in the Nassau operation (hereinafter the Meacham operation), was under investigation by the Nassau County police, who obtained pen register orders and, later, eavesdropping warrants for the Meacham operation's telephones. The police then wiretapped telephone lines which belonged to Bernard Rothman and Cavalieri in Queens and Manhattan, to which telephones the Meacham operation made numerous calls. During the course of the investigation it was discovered that Rothman ran a bookmaking operation in lower Manhattan (hereinafter the Manhattan operation) assisted by Cavalieri. It was also learned that the defendants John Giordano, Joseph Giordano, and Philip Cestaro were participants in the Manhattan operation.

On May 24, 1989, the defendants along with numerous other individuals were arrested pursuant to warrants issued in Nassau County. On November 21, 1989, an indictment was filed charging the defendants and 13 others, including Rothman, in varying combinations, with eighteen counts of promoting gambling in the first degree and one count of conspiracy in the fifth degree based on the charges of promoting gambling in the first degree. Prior to the trial, all of the defendants named in the indictment except John Giordano, Joseph Giordano, Philip Cestaro, and two others entered pleas of guilty. One of the two other individuals entered a plea of guilty during jury selection and one died during the trial.

The evidence against the defendants was based on certain actions of Rothman in connection with the Manhattan operation. Rothman "hedged" a portion of the Manhattan operation's bets with the Meacham operation. Hedging is the practice of one bookmaker placing bets with another bookmaker in order to minimize his risks. Rothman was alleged to be the sole bookmaker or sheetwriter of the Manhattan operation; defendant John Giordano was a supervisor; defendant Joseph Giordano was the assistant supervisor; and defendant Philip Cestaro was a runner. Aside from Rothman's hedging bets from the Manhattan operation via the telephone there was no connection between the Manhattan operation and Nassau County.

The defendants were convicted of four counts each of pro-

moting gambling in the first degree and one count each of conspiracy in the fifth degree.

CPL 20.40 (1) insofar as pertinent provides that:

"A person may be convicted in an appropriate criminal court of a particular county, of an offense of which the criminal courts of this state have jurisdiction pursuant to section 20.20, committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law, when:

"1. Conduct occurred within such county sufficient to establish:

"(a) An element of such offense; or

"(b) An attempt or a conspiracy to commit such offense".

Penal Law § 225.10 (1) provides:

"A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by:

"1. Engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars".

Penal Law § 225.00 (9) gives the following definition of the term bookmaking: " 'Bookmaking' means advancing gambling activity by unlawfully accepting bets from members of the public as a business, rather than in a casual or personal fashion, upon the outcomes of future contingent events".

Penal Law § 225.00 (4) defines advancing gambling activity as follows: "A person 'advances gambling activity' when, acting other than as a player, he engages in conduct which materially aids any form of gambling activity. Such conduct includes but is not limited to conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation. One advances gambling activity when, having substantial proprietary or other authoritative control over premises being used with his knowledge for purposes of gambling activity, he permits such to occur or continue or makes no effort to prevent its occurrence or continuation."

The only bookmaking in which the defendants were in-

volved took place in New York County. Nassau County had no jurisdiction on these facts to prosecute them for committing the crime of promoting gambling in the first degree by

"advanc[ing] * * * gambling activity by * * *

"[e]ngaging in bookmaking" (Penal Law § 225.10 [1]).

My colleagues' reasoning might be valid if the defendants were charged with violating Penal Law § 225.05 which reads as follows: "A person is guilty of promoting gambling in the second degree when he knowingly advances or profits from unlawful gambling activity."

However, these defendants were not charged with advancing gambling generally in the manner described in Penal Law § 225.05. They were charged with advancing gambling by engaging in bookmaking.

The fact that promoting gambling in the second degree under Penal Law § 225.05 is a lesser included offense of promoting gambling in the first degree under Penal Law § 225.10 (i.e., engaging in bookmaking) did not give Nassau County jurisdiction. The defendants here were indicted and prosecuted for promoting gambling in the first degree. Nassau County's jurisdiction to prosecute the defendants pursuant to CPL 20.40 (1) (a) depended on conduct occurring in Nassau County sufficient to establish an element of bookmaking as that crime is defined in Penal Law § 225.00 (9). The elements of a crime are those constituent parts of the crime which must be proved by the prosecution to sustain a conviction. Hedging bets is not an element of promoting gambling in the first degree by engaging in bookmaking (see, Penal Law § 225.10 [1]).

While there is language in *People v Botta* (100 AD2d 311) supporting the majority's position, the facts of that case were very different from the facts of this case. In *Botta* the defendant, who lived in Nassau County, ran a bookmaking operation in Queens County. Usually he and an underling, his codefendant Cannon, worked together in the wireroom in Queens. However when Botta went home to Nassau County, he would use the telephone to conduct business and keep in touch with Cannon. Botta instructed his accomplice Cannon, via the telephone, concerning "the maintenance and operation of the wireroom [and] * * * the forwarding of [the] customer's wagers" *(People v Botta, supra,* at 315). It could be reasonably concluded based on the contents of the conversations that both defendants were conversing for the purpose of taking and recording bets *(People v Botta, supra,* at 316). Furthermore,

although in *Botta* this Court properly found that Nassau County had jurisdiction based on CPL 20.40 (1) (a), there clearly also was jurisdiction under CPL 20.40 (1) (b) based on Botta's conspiring with Cannon over the telephone *(see, e.g., People v Cousart,* 74 AD2d 877).

In contrast, in this case, a bookmaker in Manhattan telephoned a bookmaker in Nassau County to hedge bets. There was no proof whatsoever that the two operations were related. Rothman, the Manhattan bookmaker was not an accomplice of the people running the Meacham operation in Nassau County. Arguably under *Botta,* Nassau County had jurisdiction to prosecute the defendants under Penal Law § 225.05 (promoting gambling in the second degree) based on a literal reading of that statute with CPL 20.60 (1) (intercounty telephone conversations constitute conduct in each county) and Penal Law § 225.00 (4) (defining the term advance gambling activity). However, a literal application of those statutes to the facts of this case raises constitutional concerns *(see, e.g., People v R.,* 160 Misc 2d 142). A defendant has the right at common law and under New York Constitution, article I, § 2 to be tried in the county where the crime was committed unless one of the statutory exceptions contained in CPL article 20 applies *(see, People v Ribowsky,* 77 NY2d 284, 291; *People v Moore,* 46 NY2d 1, 6). The exceptions were created out of necessity, as "[s]trict adherence to the common-law rule often created insurmountable obstacles to prosecution" *(People v Moore, supra,* at 7). As such, the exceptions are to be narrowly interpreted and applied *(see, e.g., People v Fea,* 47 NY2d 70; *People v Moore, supra).*

The majority employs CPL 20.60 (1) to bootstrap Nassau County into jurisdiction based on a theory, gleaned from *Botta,* that Nassau County had jurisdiction of the lesser included offense (promoting gambling in the second degree) and, therefore, also had jurisdiction to prosecute the greater offense (promoting gambling in the first degree) *(see, People v Botta, supra,* at 316-317). In my judgment, this reasoning does not interpret and apply these statutes narrowly on these facts. The correct forum for prosecution of the crimes charged was New York County, where conduct occurred sufficient to establish all of the elements of the completed crime of promoting gambling in the first degree (Penal Law § 225.10). In contrast, no conduct occurred in Nassau County

"sufficient to * * *

"establish [a]n[y] element of such offense" (CPL 20.40 [1] [a]).

Nassau County also had no jurisdiction over the count of the indictment charging the defendants with conspiracy in the fifth degree. In order to establish the existence of a conspiracy, there must be proof of an agreement evidencing an intent to accomplish the object of the conspiracy *(see, People v Leisner,* 73 NY2d 140). Here, there simply was no agreement between these defendants and the operators of the Meacham operation in Nassau County to engage in bookmaking.

Accordingly the convictions should be reversed and the indictment dismissed.