■ The People of the State of New York, Respondent, v Sam Parsons, Jr., Appellant. [714 NYS2d 182] —Judgment unanimously affirmed. Memorandum: Defendant appeals from a judgment convicting him after a jury trial of criminal possession of a controlled substance in the first degree (Penal Law §§ 20.00, 220.21) and conspiracy in the second degree (Penal Law §§ 20.00, 105.15). On December 5, 1996, police obtained information from a wiretapped conversation between Robert Gray and Steven Maldonado that a drug transaction was scheduled to occur on December 6, 1996. On December 6, 1996, police intercepted a telephone call between Gray and Maldonado in which Gray stated that he would send "Sam" (defendant) over to pick up the cocaine. Police observed defendant exit a car in front of Maldonado's house and look up and down the street before proceeding to the house.

The same morning, police intercepted a call between Gray and Calvin Jessie arranging to meet on "B Street" with "my man * * * Sambo". Jessie testified for the prosecution that Gray told defendant "to get the coke in the back"; that defendant proceeded to the garage at his parent's home on Bernard Street in Rochester; and that defendant then returned to the car in which Gray and Jessie were seated with one-half kilogram of cocaine wrapped in brown paper and taped. At Jessie's request defendant retrieved another one-half kilogram of cocaine from the garage and, when he returned to the car, Jessie handed defendant $15,000 as payment for the cocaine. Juan Zuluaga, who brought the drugs from Queens to Maldonado, testified for the prosecution that, after the transaction with Jessie, defendant and Gray arrived at Maldonado's residence and defendant handed Maldonado $39,000 as payment for cocaine that defendant had picked up that morning.

Defendant's brother testified for the defense that defendant has marginal intelligence, having attended special education classes in high school, and therefore could not form the intent required to commit the crimes with which he was charged. He

further testified that defendant was used by Gray to handle the drugs and money to insulate Gray from culpability and that defendant would not have known what was in the packages because they were wrapped and taped.

Contrary to the contention of defendant, the verdict finding him guilty of criminal possession of a controlled substance in the first degree is not against the weight of the evidence (*see, People v Bleakley,* 69 NY2d 490, 495). Defendant further contends that his conviction of that crime is not supported by legally sufficient evidence because the testimony of the accomplices was not sufficiently corroborated and, without that testimony, there is no evidence that defendant possessed more than four ounces of cocaine. Defendant failed to preserve that contention for our review (*see, People v Gray,* 86 NY2d 10, 19). In any event, the testimony of the accomplices was sufficiently corroborated (*cf., People v McGrath,* 262 AD2d 1043).

Defendant contends that the verdict finding him guilty of conspiracy in the second degree is against the weight of the evidence because his acquittal of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree demonstrates that he was not involved in a conspiracy to sell cocaine. Although a different result would not have been unreasonable (*see, People v Bleakley, supra,* at 495), the jury could reasonably have found that defendant participated in the conspiracy by driving to Maldonado's house to procure the drugs that were sold to Calvin Jessie, and driving to Maldonado's house with Gray to pay for the drugs. Furthermore, the agreement between defendant and the co-conspirators could be "established inferentially by circumstances indicating that defendant engaged in a common effort or acted in concert with others to achieve a common goal" (*People v Givens,* 181 AD2d 1031, *lv denied* 79 NY2d 1049), i.e., police observed defendant looking up and down the street before he proceeded to Maldonado's house.

Defendant failed to preserve for our review his contention that Supreme Court erred in failing to marshall the evidence with respect to the sale of drugs to Jessie (*see, People v Nenni,* 269 AD2d 785, *lv denied* 95 NY2d 801), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see,* CPL 470.15 [6] [a]). Defendant also failed to preserve for our review his contentions that the court's charge with respect to Penal Law § 20.00 was improper (*see, People v Congelosi,* 266 AD2d 930, 931, *lv denied* 94 NY2d 902, 95 NY2d 794), that the court erred in failing to instruct the jury on the meaning of "dominion" or

"control", and that the court erred in failing to charge the jury with respect to the credibility of accomplices. In any event, those contentions lack merit. The court's charge sufficiently explained the requirement that defendant have the intent to commit the three crimes for which he was charged as an accomplice and, with respect to "dominion" and "control", mirrored the charge set forth in the Criminal Jury Instructions (*see,* 2 CJI[NY] PL 220.21 [1] [2d ed]). The court's charge with respect to the credibility of witnesses and the corroboration requirement for accomplice testimony properly conveyed the correct standard (*see, People v Fields,* 87 NY2d 821, 823).

Defendant was not deprived of a fair trial by prosecutorial misconduct on summation. The court sustained defendant's objection when the prosecutor referred to Robert Gray, who was apparently seated in the back of the courtroom. The prosecutor's improper reference to Gray was not so egregious that defendant was thereby deprived of a fair trial (*see, People v Scutt,* 254 AD2d 807, 808, *lv denied* 92 NY2d 1038). Contrary to defendant's contention, the prosecutor's discussion of the derivation of the word "conspire" was not improper. Also contrary to defendant's contention, the court properly instructed the jury that a person who is in actual possession of a narcotic drug is presumed to know that he possessed the drug (*see, People v Sanchez,* 86 NY2d 27, 33; *People v Reisman,* 29 NY2d 278, 285-286, *cert denied* 405 US 1041).

Defendant consented to the verdict sheet, and thus the court did not err in submitting the verdict sheet to the jury (*cf., People v Daniels,* 233 AD2d 932). In any event, the verdict sheet set forth only the offenses and possible verdicts (*see,* CPL 310.20 [2]).

The sentence is not unduly harsh or severe. We have considered defendant's remaining contentions and conclude that they are without merit. (Appeal from Judgment of Supreme Court, Monroe County, Mark, J.—Criminal Possession Controlled Substance, 1st Degree.) Present—Pigott, Jr., P. J., Pine, Hurlbutt, Scudder and Kehoe, JJ.