(November 15, 2001)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAWRENCE D. HARRIS, Also Known as DAHU, Also Known as D.,

Appellant. (Action No. 1.) THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY J. WRIGHT, Also Known as ANDREW D. SMITH, Also Known as C., Appellant. (Action No. 2.) [732 NYS2d 664] —Spain, J. Appeals from two judgments of the County Court of Fulton County (Lomanto, J.), rendered July 30, 1997 and August 6, 1997, upon a verdict convicting defendants of the crimes of criminal possession of a controlled substance in the first degree, criminal facilitation in the second degree, conspiracy in the second degree, criminal sale of a controlled substance in the third degree (three counts) and criminal facilitation in the fourth degree (three counts).

Following a joint jury trial, defendants were convicted as charged of three counts of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the first degree, conspiracy in the second degree and other related charges. The convictions stem from evidence and testimony establishing that defendants engaged in the sale of crack cocaine from the home of James Hill and Hill's girlfriend, Sharon Cannizzo, in the Town of Caroga, Fulton County, between January and April 1996. Hill and Cannizzo, cocaine addicts who testified pursuant to cooperation agreements, testified that they agreed to allow defendants to sell cocaine out of their house in exchange for cocaine for their personal use. Under the arrangement, Hill and Cannizzo dealt directly with customers who came to their house to purchase crack cocaine, all of which was supplied by defendants. Hill took the money from the customer and then went to a designated closed bedroom, turned the money over to one of the defendants who supplied the drugs for the sale, and Hill returned to the customer with the paid-for cocaine. Hundreds of such transactions occurred in March 1996 alone. If defendants were not in the house when a customer arrived, Hill and Cannizzo contacted them by beeper. Cannizzo assisted the sales primarily by letting customers into the house and paging defendants. Hill and Cannizzo testified that, during this period of time, they never sold cocaine without the aid and presence of one of the defendants.

In early March 1996, a local drug addict informed a member of the Fulton County Drug Task Force that drug sales were occurring at the Hill/Cannizzo residence and agreed to act as a confidential informant; no charges were pending against the informant although, unbeknownst to him, he was under investigation for drug activity. Thereafter, the informant participated in three controlled purchases of cocaine from the residence, two on March 13, 1996 and one on March 19, 1996.

In all three buys, the informant entered the house, gave the money to Hill, and Hill left the room and returned with the crack cocaine, which the informant turned over to police waiting outside. Hill, Cannizzo and both defendants were arrested at the residence on April 3, 1996 and a search disclosed more than 5.6 ounces of crack cocaine, an electronic scale, razor blades, plastic bags and duct tape in the bedroom from which defendants operated. The informant testified before the Grand Jury in July 1996 and at defendants' trial pursuant to a cooperation agreement in which the People agreed not to bring felony charges for certain conduct in which he had engaged prior to these controlled buys. Prior to trial, the People moved for a protective order regarding the informant. After a *Darden* hearing, County Court granted the request and the informant's identity, prior written statements, Grand Jury testimony and criminal history (*see*, CPL 240.44, 240.45), *inter alia*, were not disclosed to defense counsel until just before he actually testified at trial.

Another customer testified at trial that he purchased cocaine at this residence in the same manner approximately 20 to 30 times between January and April 1996. He recounted that, during a January 1996 purchase, he gave Hill the money and Hill left the room heading toward the living room—where the witness had just observed both defendants watching television—and Hill returned with crack cocaine. The witness also saw defendant Lawrence D. Harris there during a buy on April 2, 1996. Yet another customer testified that he purchased drugs in this manner approximately 20 to 30 times between January and April 1996 at this residence. The testimony at trial also established that the Isuzu Trooper with Virginia license plates driven by defendants was observed at the residence during the controlled buys, as well as on many other occasions on which drug sales took place.

In the middle of the People's presentation of proof at trial, defendant Anthony J. Wright, who was free on bail, absconded and, when efforts to locate him were unsuccessful, County Court proceeded with the trial in his absence. The defense theory at trial primarily challenged the adequacy of the People's proof that defendants were present at or participated in drug sales. Upon his convictions on all nine counts, Harris was sentenced as a second felony offender to various terms of imprisonment which, in their aggregate, total 62½ years to life. Wright was sentenced in absentia to various terms of imprisonment which, in their aggregate, total 50 years to life. Defendants appeal and, at their request, their appeals were consolidated.

Harris' first contention is that he was denied effective assistance of counsel and due process of law because the attorney who represented him *prior to trial*—Michael Albanese—had represented the informant on unrelated charges (a DWI, a probation violation and a later charge of resisting arrest) at the same time that he represented Harris. When Harris' trial counsel learned the informant's probable identity midtrial, he moved for a mistrial arguing that Albanese's pretrial representation of Harris on these charges from May 1996 to January 1997 and overlapping representation of the informant on the unrelated charges from September or October 1996 until February or March 1997 constituted an actual conflict of interest.

County Court questioned Albanese, who indicated on the record in open court that while he was aware that there was a confidential informant in the Harris case and knew that his client (the informant) had acted as a confidential informant, he *did not know* that the informant was cooperating *in the Harris case*. Notably, at the time that Albanese undertook representing the informant in September or October 1996, he was already acting as an informant, having (1) engaged in the controlled buys in March 1996, (2) testified at the Grand Jury investigating defendants in July 1996, and (3) entered into a cooperation agreement with the People. Albanese also informed the court that, in the course of representing the informant on those unrelated charges, the District Attorney had requested that he encourage the informant to continue to cooperate with her office, but the District Attorney never disclosed to Albanese that the informant's testimony would involve the Harris case. Albanese first learned of this conflict when questioned at this trial, having ceased representing Harris about five months earlier. County Court denied defendant's request for a mistrial or a hearing.

We cannot agree that Harris was denied effective assistance of counsel or due process as a result of Albanese's *pretrial* representation of both Harris and the informant. As an initial matter, it is significant that Albanese was *not* Harris' trial counsel and that Harris' trial counsel undisputedly had no conflict (*cf., People v Lombardo*, 61 NY2d 97, 102-103). Also, County Court credited Albanese's assurances that, at the time that he simultaneously represented Harris and the informant, he was unaware that the informant was cooperating in the Harris prosecution and there is no evidence to the contrary. Albanese neither induced the informant to become an informant nor negotiated a cooperation agreement on his behalf (*cf., Burden v Zant*, 24 F3d 1298; *People v Mattison*, 67 NY2d 462,

470, *cert denied* 479 US 984), but simply encouraged him to *remain* cooperative in unspecified cases pursuant to their preexisting cooperation agreement. Accordingly, unaware that his clients had conflicting interests, it cannot be said that Albanese was unable to give Harris (or the informant) his undivided loyalty (*see, People v Ortiz*, 76 NY2d 652, 656; *People v Wandell*, 75 NY2d 951) or that his devotion to the pretrial defense of Harris was other than "single-minded" (*see, People v Darby*, 75 NY2d 449, 454; *People v Lombardo, supra*, at 102-103). Under these circumstances, Albanese's innocent overlapping pretrial representation of the informant did not negatively impact on Albanese's pretrial representation of Harris (*see, People v Ortiz, supra*, at 657; *People v Alicea*, 61 NY2d 23, 31).

We also are mindful, however, that the District Attorney, like defense counsel, is "under a mandatory affirmative obligation both to recognize the existence of a potential conflict and to alert the court to the facts and circumstances surrounding that potential conflict" (*People v Wandell, supra*, at 952; *see, People v McDonald*, 68 NY2d 1, 8). Here, the record is uncontroverted that the District Attorney urged Albanese to advise the informant to continue cooperating in pending cases at a time that the People knew (or are chargeable with the knowledge) that the informant was a significant prosecution witness against another client of Albanese, i.e., Harris. While we find inexcusable the District Attorney's failure to bring to light this overlapping representation, we find that it neither affected Albanese's pretrial representation of Harris nor the ultimate trial representation of Harris.

Wright argues that the prior representation by his trial counsel—Fulton County Assistant Public Defender William Martuscello—of Hill, a key cooperating witness, in the 1990s on unrelated parole violation charges constituted a conflict of interest. However, Martuscello commenced cross-examination of Hill by eliciting on the record this prior representation, advising Hill of his continuing obligation to protect his confidences and privileged information so obtained, and Hill expressly consented to Martuscello's use of any information so obtained. As such, Hill waived this right and relieved Martuscello of this continuing obligation to him as a former client, freeing Martuscello to give Wright his undivided loyalty, thereby obviating any potential conflict (*see, People v Ortiz, supra*, at 656; *People v Alicea, supra*, at 29; *cf., People v Wandell, supra*, at 952; *People v Lombardo, supra*, at 102). Notably, Harris' trial counsel was the first to cross-examine Hill, elicit-

ing at length his possible motives to testify against defendants, including the favorable cooperation agreements accorded to Hill and his girlfriend, Cannizzo, and attacking Hill's credibility. Martuscello then cross-examined Hill further, also exploring his incentives to testify. Viewed in context and as a whole, we cannot conclude that Martuscello's representation of Wright at trial "was in fact affected" by the operation of the potential conflict or that the conflict "operated on" his defense (*People v Alicea, supra,* at 31; *see, People v Ortiz, supra,* at 656-657; *see also, People v Recupero,* 73 NY2d 877, 879; *People v Butts,* 254 AD2d 823, *lv denied* 92 NY2d 1029; *People v Medina,* 208 AD2d 974, 975, *lv denied* 84 NY2d 1035), or that County Court erred in failing to inform Harris of the possibility of this conflict or to conduct further inquiry.

Wright also claims that he was prejudiced by virtue of the Fulton County Public Defender's prior representation of the informant. We disagree. The record establishes that another Assistant Public Defender—not Martuscello—briefly represented the informant in 1996 on unrelated charges, this representation ceased before this trial and the absence of any resulting prejudice (*see, People v Smith,* 271 AD2d 752, 753).

Next, we find no merit in defendants' contentions that County Court committed reversible error when, during trial, it questioned several sworn jurors in camera and in the presence of defense counsel but in defendants' absence. During trial, one of the sworn jurors informed the court that, prior to being selected, she had contact with an unidentified woman and later observed that woman in the presence of one of the defendants (she was unable to say which one), which caused her some concern about retaliation in the event that the jury voted to convict. In another inquiry, a second sworn juror was questioned about her communication that a law enforcement witness had been her karate instructor three or four years earlier.

In our view, County Court's inquiries did not abrogate defendants' rights under CPL 260.20 or due process principles. The inquiries of sworn jurors regarding the ability to remain impartial were ancillary proceedings (*see, People v Mullen,* 44 NY2d 1; *see also, People v Morales,* 80 NY2d 450, 456-457), which did not involve any potential for meaningful input by defendants. Defendants were not present during the first juror's conversations and made no showing that they had any direct knowledge of the encounters (*see, People v Roman,* 88 NY2d 18, 26; *People v Sprowal,* 84 NY2d 113, 118). Also, there is no indication that defendants' presence could have been useful in ensuring a more reliable determination of the proceeding

in issue (*see, People v Morales, supra,* at 454), and claims that their presence would have had an impact on the outcome of the trial are wholly speculative (*id.,* at 455). The presence of defense counsel at the inquiries was sufficient to afford defendants a "fair and just hearing" (*People v Mullen, supra,* at 6; *cf., People v Darby,* 75 NY2d 449, *supra*), and defendants were present when their attorneys unsuccessfully argued for a mistrial and to disqualify the two jurors. Defendants are likewise unable to demonstrate that they could have potentially contributed to the narrow issue addressed at the ancillary inquiry involving the second juror (*see, People v Roman, supra,* at 26-27; *People v Sprowal, supra,* at 118; *People v Mullen, supra,* at 6).

In addition, review of the colloquies involving these jurors belies defendants' contentions that County Court should have disqualified them pursuant to CPL 270.35. The court conducted probing and tactful inquiries in which defense counsel participated (*see, People v Buford,* 69 NY2d 290, 299). While the first juror's safety concerns were not insignificant (*cf., id.*), she consistently and unequivocally assured the court that her "little bit" or "teeny bit" of concern would not affect her deliberations or consideration of the evidence (*see, id.; cf., People v Rodriguez,* 71 NY2d 214, 220-221; *People v Anderson,* 70 NY2d 729; *People v Santana,* 221 AD2d 175, *lv denied* 87 NY2d 925; *People v White,* 204 AD2d 750, *lv denied* 83 NY2d 1008). Likewise, the second juror emphatically assured the court that neither her conversations with the first juror nor her brief association several years earlier with one of the law enforcement witnesses, who was by no means a critical witness in this prosecution, would have a bearing on her verdict. The decision to disqualify turns on the facts of each particular case, and we accord deference to County Court's careful evaluation of the jurors' answers and demeanor, perceiving no basis upon which to disturb its determination (*see, People v Rodriguez, supra,* at 219; *People v Anderson, supra; People v Michael,* 48 NY2d 1, 10; *People v Leader,* 285 AD2d 823; *People v Bailey,* 258 AD2d 807, 808, *lv denied* 93 NY2d 1001).

Next, we reject defendants' claims that they were unfairly prejudiced by fleeting testimonial references by Hill and Cannizzo about the consequences of being cooperating witnesses. Defendants explored Cannizzo's self-interest in testifying for the People and, as such, it was not unfair for County Court to permit her to make reference to her resulting safety concerns and to decline to disclose the site of her employment (*see, People v Edwards,* 261 AD2d 260, *lv denied* 93 NY2d 1017). Defen-

dants did not request a curative instruction and the drastic remedy of a mistrial was not warranted (*see, People v Martinez*, 238 AD2d 126, *lv denied* 90 NY2d 895). With regard to Hill, defendants never objected to his testimony mentioning the consequences of testifying for the prosecution and, as such, any claimed error is unpreserved for our review. In any event, Hill's remarks did not imply a fear of retaliation by defendants and was clearly a reference to his inmate status.

Moreover, viewing the evidence in the light most favorable to the People and crediting them with every favorable inference, we find that the evidence was legally sufficient to establish Harris' guilt of the three counts of criminal sale of a controlled substance in the third degree[1] for the controlled buys made by the informant (*see, People v Bleakley*, 69 NY2d 490, 495; *People v Contes*, 60 NY2d 620). Hill testified that during the period of January through April 1996, he and Cannizzo never sold drugs from their house if both defendants were absent, Harris was always present in the house for the sales (Wright was also sometimes present), and defendants always supplied the drugs for the sales. The informant testified that during the controlled purchases, he gave the cash to Hill who left the room and returned with the cocaine, and several witnesses testified that defendants' vehicle was present at the time of the controlled sales. In our view, neither the fact that Hill and Cannizzo could not recollect at trial the precise sales charged nor the fact that the informant did not actually see defendants in the house when he made those controlled buys undermines the substantial evidence—particularly Hill's and Cannizzo's testimony—that defendants, acting in concert with Hill and Cannizzo, actively and knowingly participated in the charged sales by supplying the drugs and facilitating the actual transactions. Defendants were charged as accomplices of Hill in the three drug sales (*see*, Penal Law § 20.00), and the People proved beyond a reasonable doubt that they knowingly and intentionally aided and assisted Hill in the three arranged sales of cocaine to the informant (*see*, Penal Law §§ 20.00, 220.39 [1]; *People v Bleakley, supra*; *see also, People v Bello*, 92 NY2d 523, 526; *People v Roman*, 83 NY2d 866; *People v Kaplan*, 76 NY2d 140; *People v Jones*, 258 AD2d 383, *lv denied* 93 NY2d 1020; *People v Brown*, 249 AD2d 835, 835-836).

With respect to defendants' convictions for conspiracy in the second degree, the evidence, viewed most favorably to the

---

1. Wright does not argue on appeal that the evidence was legally insufficient as to him to sustain the criminal sale of a controlled substance convictions.

People, established beyond a reasonable doubt that defendants entered into an agreement with one another and Hill (and later Cannizzo) to engage in conduct constituting a class A felony, namely, criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [a class A-1 felony]), the object crime,[2] that defendants intended that conduct constituting this possessory crime be performed, and that one of the members of the conspiracy performed an overt act in furtherance of this conspiracy, specifically, the knowing and unlawful possession of a controlled substance of an aggregate weight of four ounces or more on April 3, 1996 (the day of the police raid and defendants' arrest) (*see*, Penal Law §§ 105.15, 105.20, 220.21 [1]; *People v Arroyo*, 93 NY2d 990, 991; *People v Leisner*, 73 NY2d 140, 149; *People v Contes, supra; People v Parsons*, 275 AD2d 933, 934, *lv denied* 95 NY2d 937, *cert denied* 532 US 998; *People v Rodriguez*, 274 AD2d 826, *lv denied* 95 NY2d 938; *People v Canale*, 268 AD2d 699; *People v Sledge*, 223 AD2d 922, *lv denied* 88 NY2d 854). The evidence adduced at trial sufficiently established defendants' guilt of the conspiracy charges (Penal Law §§ 105.15, 220.21 [1]).

Finally, defendants both argue that the maximum sentences imposed on them are unduly harsh and excessive and should be reduced in the interest of justice (*see*, CPL 450.30 [1]; 470.15 [6]) and violate the Eighth Amendment's proscription against cruel and unusual punishment. At sentencing, Harris admitted to the predicate felony conviction and was sentenced as a predicate felon to sentences of imprisonment aggregating 62½ years to life, with consecutive terms of 12½ to 25 years for each count of criminal sale of a controlled substance in the third degree (counts 4, 5 and 8) and a consecutive term of 25 years to life for criminal possession of a controlled substance in the first degree (count 1) for the cocaine discovered during the April 3, 1996 raid. Wright was sentenced in absentia to terms of imprisonment that, in their aggregate, total 50 years to life, with three consecutive prison terms of 8⅓ to 25 years on each of the third degree sale counts and 25 years to life on count 1, criminal possession of a controlled substance in the first degree.

First, Harris admitted the predicate felony and his challenge to the constitutionality of Penal Law § 70.06 was not raised at the time of sentencing and is not preserved for our review. In

2. While the indictment (count 3) listed four object crimes, County Court charged only criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]) as the object crime of the conspiracy. Defendants do not challenge the sufficiency of the evidence of count 1, charging criminal possession of a controlled substance in the first degree.

any event, *Apprendi v New Jersey* (530 US 466, 490) recognized that sentence enhancement based upon the fact of a prior conviction is permitted without notice, jury trial and proof beyond a reasonable doubt, as the Court of Appeals recently recognized (*see, People v Rosen*, 96 NY2d 329, *cert denied* — US —, 122 S Ct 224; *see also, People v Conyers*, 285 AD2d 825). With regard to the severity of his aggregate sentence of 62½ years to life, Harris argues that it amounts to a life sentence, which is draconian considering that he was only 27 years old at the time of these 1996 offenses, had only one prior felony conviction (a 1994 conviction for criminal possession of a weapon in the third degree, a class D felony), had lived in a group home for most of his teen years and had a positive work history.

Wright submits that he was only 27 years old and had only one prior class B misdemeanor conviction involving possession of marihuana. Defendants point to the testimony indicating that Hill and Cannizzo procured the customers, provided the house and had sold drugs out of their house prior to their association with defendants and to their comparatively lenient sentences, Hill receiving a prison sentence of 6 years to life and Cannizzo receiving a sentence of 6 months in jail. They also emphasize that no direct violence was involved in their activity. Notably, the District Attorney acknowledges that her pretrial plea offer to Harris was 6 years to life with a plea to an A-II felony and that Wright declined a plea deal of 3 years to life in prison for an A-II felony, but argues that defendants were well organized suppliers of cocaine whose conduct warrants the maximum sentences imposed.

We have reviewed all of the factors relevant to the sentencing determination—including defendants' relatively sparse criminal histories, the length of the sentences and defendants' ages, the harm caused by this drug trafficking activity, the cooperating witnesses' sentences, the preplea offers and the totality of evidence adduced at trial. Although the sentences imposed are permissible, we find it appropriate to reduce the sentences in the interest of justice (*see, People v Delgado*, 80 NY2d 780; CPL 470.15 [6] [b]) by directing that all of the sentences imposed shall run concurrently to one another (*see, People v Sheppard*, 273 AD2d 498, 500, *lv denied* 95 NY2d 908; *People v Minckler*, 265 AD2d 799, 800, *lv denied* 94 NY2d 882; *People v Prather*, 249 AD2d 954, 955, *lv denied* 92 NY2d 859).

We have examined the remainder of defendants' contentions on appeal and find that they lack merit.

Cardona, P. J., Mercure, Carpinello and Rose, JJ., concur.

Ordered that the judgments are modified, as a matter of discretion in the interest of justice, by directing that all of the sentences imposed for both defendants run concurrently to one another; and, as so modified, affirmed.